**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CANDICE DRAGANJAC AND MAHLON SMEAL, <br><br> *Plaintiffs*, <br><br> vs. <br><br> HAEMONETICS CORPORATION, <br><br> *Defendant*. | Case No. 1:23-cv-266 <br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT IN CIVIL ACTION**

Candice Draganjac (hereinafter, "Ms. Draganjac") and Mahlon Smeal (hereinafter, "Mr. Smeal") (hereinafter, collectively, "Plaintiffs"), by and through the undersigned counsel, now file this Complaint in Civil Action (hereinafter, the "Complaint"), averring as follows:

**PARTIES**

1. Plaintiffs are adult individuals, long term romantic partners and cohabitants who currently reside at 1501 ½ South Bell Avenue, Franklin, Pennsylvania 16323.

2. Defendant, Haemonetics Corporation (hereinafter "Defendant"), is a foreign business corporation, incorporated in the State of Massachusetts with a designated domestic commercial registered agent located in Dauphin County, Pennsylvania. Additionally, Defendant had business operations located at 18 Avenue C, Leetsdale, Pennsylvania 15056, the physical location where Plaintiffs reported to while employed by Defendant (hereinafter, the "Facility"). Presently, Defendant's local business operations have been moved to 1300 Clifford Ball Drive, Clinton, Pennsylvania 15026.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs bring this lawsuit asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter, "Title VII").

4. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because Plaintiffs allege violations of the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* (hereinafter, the "PHRA"). Ultimately, as explained more thoroughly below, the factual basis for the Pennsylvania statutory claim is so related to the Title VII[1] claim that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court as Plaintiffs are residents and citizens of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Pittsburgh, Allegheny County, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

6. With respect to the Title VII claim, Plaintiffs have satisfied all procedural and administrative requirements set forth in 29 U.S.C. § 626, and 42 U.S.C. § 2000e-5 in that:

    a. Mr. Smeal filed a timely administrative complaint on or about December 12, 2022 with the Equal Employment Opportunity Commission (hereinafter, "EEOC") alleging, among other things, that Defendant terminated her in violation of Title VII at case number 533-2023-00231 (the "Smeal Charge");

    b. Ms. Draganjac also filed a timely administrative complaint on or about December 12, 2022 with the EEOC alleging, among other

---

[1] Notably, Pennsylvania state courts interpret the applicable provisions of the PHRA in accord with its counterpart provisions in Title VII. See *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 138 (E.D. Pa. 2020).

       things, that Defendant terminated her in violation of Title VII at case number 533-2023-00244 (the "Draganjac Charge");

  c. On June 12, 2023, the Draganjac Charge was dismissed by the EEOC wherein Ms. Draganjac was afforded ninety (90) days within which to timely file an action in federal or state court. With the filing of the instant Complaint, Ms. Draganjac further satisfies any procedural requirements; and

  d. On June 14, 2023, the Smeal Charge was dismissed by the EEOC wherein Mr. Smeal was afforded ninety (90) days to timely file an action in federal or state court. With the instant filing, Mr. Smeal also satisfies said any further procedural requirements.

7. A true and correct copy of the notice of determinations issued by the EEOC related to the Draganjac Charge and Smeal Charge are attached hereto, made a part hereof, and marked as **Exhibit A.**

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8. Plaintiffs were each long-term employees of Defendant; Ms. Draganjac's tenure spanned approximately fourteen (14) years and Mr. Smeal's tenure spanned approximately eleven (11) years.

9. At the time of their unlawful terminations, Ms. Draganjac was a "Quality Assurance Technician" being paid $20.86 per hour worked. At the same time, Mr. Smeal was a "Machine Operator II" being paid $18.08 per hour worked. Additionally, both Ms. Draganjac and Mr. Smeal earned a shift-differential premium of $0.25 per hour worked.

10. In or around March of 2020, in the midst of the COVID-19 pandemic, Defendant mandated that (i) all employees would be separated by shift at the Facility; (ii) facial masks were required to be worn at all times; (iii) employees practice social distancing; and (iv) employees

undergo daily temperature checks upon arrival at the Facility (hereinafter, the "COVID-19 Protocols").

11. Plaintiffs complied at all times and without issue with the COVID-19 Protocols.

12. In or around November of 2020, Defendant provided additional guidance relative to the COVID-19 Protocols wherein it strongly encouraged employees to receive the brand new COVID-19 vaccination.

13. On or about November 18, 2021, Defendant issued an internal COVID-19 vaccine mandate in accordance with OSHA guidance (the "Vaccine Mandate"). Although the OSHA COVID-19 vaccine mandate was later struck down by the Supreme Court of the United States, Defendant opted to continue the Vaccine Mandate.

14. On or about December 9, 2021, Plaintiffs each requested a religious exemption from the Vaccine Mandate (hereinafter, the "Religious Exemption Requests").

15. Notably, Plaintiffs are devoutly religious. Although they do not follow a singular organized religion, they subscribe to Christian principles and rely strongly upon the words of the Bible. Deeply engrained in their beliefs is the purity of the body and the protection of the body against toxins and other biblically condemned pollutants. Given the unknown effects of the ingredients in the practically brand new COVID-19 vaccine, Plaintiffs could not accept having the vaccine injected into their bodies without compromising their religious convictions.

16. Plaintiffs detailed their objections to the COVID-19 vaccine in their respective Religious Exemption Requests submitted to Defendant on December 9, 2021.

17. On or about February 11, 2022, Plaintiffs respective Religious Exemption Requests were denied by Defendant via a rejection letter provided to Plaintiffs (hereinafter, the "Rejection Letters").

18. Defendant, in the Rejection Letters, cited that the vaccinations were necessary, and any accommodation would be "an undue economic burden on the company." Specifically, Defendant noted (i) an inability to socially distance vaccinated employees from unvaccinated employees; (ii) an expensive testing program to determine each day if someone had COVID-19; (iii) an inability to monitor mask wearing; (iv) a lack of other positions available; (v) a sterile working environment; and (vi) a high rate of COVID-19 transmission.

19. Upon information and belief, Defendant was readily able to continue the previous COVID-19 Protocols to which Plaintiffs were readily able and willing to abide by has they had previously done in the course of their employment.

20. Subsequent to the foregoing, in obvious contravention to the Rejection Letters, Defendant stated to Plaintiffs that if they had any "medical exemption" requests, they could be considered for same and provided Plaintiffs with the requisite medical exemption forms. Same were rejected by Plaintiffs as Plaintiffs did not possess a "medical" reason for said exemptions.

21. For salient context, Defendant is a multinational company with offices and factories in over twenty (20) cities across the world, which gives substantial resources to effectuate accommodations, to wit: Defendant was fiscally able to operate under the earliest of COVID-19 guidance through, and including the day of Plaintiffs unlawful termination and in the days after, which included temperature checks, social distancing, altered shifts, and later, masks and weekly testing.

22. Moreover, throughout the COVID-19 pandemic, Defendant never ceased nor suspended its business operations at the Facility and correspondingly Plaintiffs never worked remotely during that time, as millions of employees worldwide did.

23. Further, as set forth above, Defendant made clear to Plaintiffs that it was willing to make accommodations for medical exemptions – just not religious ones.

24. In or around March of 2022, Plaintiffs were advised by Defendant that it would be their last month of employment with Defendant. Notably, during that time, Plaintiffs submitted to COVID-19 testing at the conclusion of each of their respective shifts.

25. On or about April 11, 2022, Defendant terminated Plaintiffs' employment wherein the stated reason provided by Defendant was their refusals to receive the COVID-19 vaccination.

26. Upon information and belief, on or about September of 2022, Defendant disavowed any related COVID-19 protocols and abandoned said protocols. Indeed, the same procedures Defendant utilized as justification to terminate Plaintiffs.

## COUNT I
### FAILURE TO ACCOMMODATE RELIGIOUS BELIEFS IN VIOLATION OF TITLE VII AND THE PHRA
**42 U.S.C. § 2000e, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.***

27. Plaintiffs incorporate the allegations contained in the paragraphs above, as if fully set forth at length herein.

28. Title VII failure to accommodate claims are governed by a burden-shifting framework. *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010). To establish a *prima facie* case of religious discrimination, the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. *GEO Grp*, 616 F.3d at 271, citing *Webb v. City of Phila.*, 562 F.3d 256, 259 (3d Cir. 2009).

29. Applied to the relevant facts here, those elements would require a plaintiff to show "(1) a sincere religious belief in conflict with the vaccine requirement; (2) that she informed [d]efendant[] of the conflict by filling out a religious exemption form, and (3) that she was

6

discharged or disciplined for failing to comply with the requirement." *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 642 (E.D. Ky. 2021).

30. In addition, under 42 U.S.C. § 2000e(j), an employer must make reasonable accommodations for its employees' religious beliefs and practices unless doing so would create an "undue hardship" for the employer. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008).

31. "There may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of [Title VII]." *Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506, 515 (1st Cir. 1996). See *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317-18 (3d Cir. 1999).

32. As set forth above, Plaintiffs are devoutly religious wherein they subscribe to Christian principles and rely strongly upon the words of the Bible. Deeply engrained in their beliefs is the purity of the body and the protection of the body against toxins and other biblically condemned pollutants. Given the unknown effects of the ingredients in the practically brand new COVID-19 vaccine, Plaintiffs are diametrically opposed to – and affirmatively condemn –having the COVID-19 vaccine injected into their bodies without compromising their religious convictions.

33. In filing out the Religious Exemption Requests to seek a religious exemption, Plaintiffs expressly informed Defendant that the COVID-19 vaccination requirements directly and irreconcilably conflicted with their religious beliefs.

34. Nonetheless, and regardless of Plaintiffs' sincerely held religious beliefs, Defendant terminated Plaintiffs from employment because they did not receive the COVID-19 vaccination.

35. Moreover, Defendant failed to offer any religious accommodations to Plaintiffs and failed to engage, in any manner whatsoever, in an interactive process with Plaintiffs to discuss possible accommodations.

36. As such, Defendant failed to consider Plaintiffs' respective Requests for Religious Exemptions on an individualized basis and, consequently, denied Plaintiffs' requests solely on the basis that it invoked their religious belief structure.

37. More importantly, Defendant could have reasonably accommodated Plaintiffs by permitting then to continue their employment by utilizing the protocols which were already in place by requiring Plaintiffs to maintain the above-mentioned measures when they worked at the Facility, *e.g.,* daily COVID-19 testing, social distancing, masking, and temperature checks.

38. This accommodation would have been reasonable because, as previously averred, Defendant had the fiscal resources necessary to effectuate same.

39. On or about April 11, 2022, Defendant terminated Plaintiffs from employment because they failed to receive the COVID-19 vaccination.

40. Ultimately, because Defendant failed to provide Plaintiffs with reasonable accommodations, Defendant perpetuated religious discrimination and, in so doing, contravened the protections afforded to Plaintiffs under Title VII and the PHRA.

41. Additionally, given the grave and disturbing nature of Defendants' conduct described hereinabove, it is evidence that Defendant displayed reckless indifference to Plaintiffs' rights under Title VII and the PHRA.

42. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiffs have suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment

and humiliation, pain and suffering, and are entitled to compensatory damages for these injuries, in addition to the tangible economic losses they suffered and will continue to suffer.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### RETALIATORY DISCHARGE ON THE BASIS OF RELIGIOUS BELIEFS IN VIOLATION OF TITLE VII AND THE PHRA
### 42 U.S.C. § 2000e, *et seq.*; 43 Pa. Cons. Stat. § 951, *et seq.*

43. Plaintiffs incorporate the allegations contained in the paragraphs above, as if fully set forth at length herein.

44. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity, (2) the employer took a materially adverse action against her, and (3) there was a causal connection between the protected activity and the employer's action." *LeBoon v. Lancaster Jewish Community Center Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007).

45. On or about December 9, 2021, Plaintiffs submitted documentation to Defendant, seeking a religious exemption to the vaccination mandate, which is a protected activity for purposes of Title VII.

46. On or about February 11, 2022, Defendant denied Plaintiffs' Requests for Religious Exemptions.

47. As averred previously, Defendant failed to consider Plaintiffs' religious exemption on an individualized basis, thus displaying religious hostility and animus toward Plaintiffs' sincerely held religious beliefs.

48. As discussed above, Defendant could have provided Plaintiffs with reasonable accommodations, but entirely failed to engage in any interactive process with Plaintiffs to discuss

9

or otherwise explore accommodations, which further indicates Defendant's religious hostility and animus towards Plaintiffs' sincerely held religious belief.

49. On April 11, 2022, Defendant terminated Plaintiffs because they did not comply with the vaccination mandate and allegedly did not qualify for religious exemptions.

50. Given the close temporal proximity that exists from the time Defendant denied Plaintiffs' requests for religious accommodations to the time Defendant terminated Plaintiffs' employment (2 months), combined with Defendant's apparent hostility and animus towards Plaintiffs' religious beliefs, there is a strong causal connection between Plaintiffs' requests for religious accommodations and their termination.

51. Therefore, because Defendant terminated Plaintiffs on the basis of their religious beliefs, Defendant flouted the commands and protections of - and Plaintiff's rights under – Title VII and the PHRA.

52. Additionally, given the grave and disturbing nature of Defendant's conduct described hereinabove, it is evident that Defendant displayed reckless indifference to Plaintiffs' rights under Title VII and the PHRA.

53. As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiffs have suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and are entitled to compensatory damages for these injuries, in addition to the tangible economic losses they suffered and will continue to suffer.

WHEREFORE, Plaintiffs seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Honorable Court to enter judgment in their favor, and against Defendants and prays for relief as follows:

1. Declare and find that Defendant committed one or more of the following acts:

    i. Violated Title VII and/or the PHRA in failing to provide Plaintiffs with reasonable accommodations; and/or

    ii. Violated Title VII and/or the PHRA in retaliatorily discharging Plaintiffs for requesting reasonable accommodations.

2. Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3. Award equitable relief in form of back pay and front pay;

4. Award punitive damages sufficient to deter Defendant from future conduct;

5. Award attorney's fees; and/or

6. Award pre-judgment and continuing interest as calculated by the Court.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: September 8, 2023           By: _____
                                                    Kyle H. Steenland (Pa. I.D. No. 327786)

                                                    The Workers' Rights Law Group, LLP
                                                    Foster Plaza 10
                                                    680 Andersen Drive, Suite 230
                                                    Pittsburgh, PA 15220
                                                    Telephone: 412.910.9592
                                                    Facsimile: 412.910.7510
                                                    kyle@workersrightslawgroup.com

                                                    *Counsel for Plaintiffs, Candice Draganjac and Mahlon Smeal*

**VERIFICATION**

We, Candice Draganjac and Mahlon Smeal, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of our personal knowledge, information and/or beliefs. We understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if we knowingly make false averments, we may be subject to criminal penalties.

Dated: 09 / 07 / 2023

*Candice N. Draganjac*
Candice Draganjac

Dated: 09 / 07 / 2023

*[signature]*
Mahlon Smeal